Please be seated. The clerk will call the first case. Good morning everyone. Welcome to the Illinois Appellate Court, 1st District, 1st Division. We apologize for the delay in starting today. We ask that the lawyers who are going to argue, please step up, introduce themselves, and tell us whom you represent. Good morning. Lysanne Pugliese, appearing on behalf of the people of the state of Illinois. Good morning. James Morsi, on behalf of Zachary Brown. And Madam Assistant State Attorney, please help us with your last name one more time. Absolutely. Pugliese. Pugliese. Thank you. It was not even close to what I thought. All right. Under Illinois Supreme Court rule 352B, each side has 20 minutes for the main argument. The appellant has 10 minutes for rebuttal. We may change that if we have a lot of questions or if the questions or the comments become repetitive. Please remember to speak loudly. Our microphones do not really amplify very well. They simply are here to record what's being said. Also, please understand we have read the briefs and are familiar with the facts of the case, so devote your time to the strongest arguments. Ms. Pugliese. I'm sorry. Mr. Morsi. Good morning again. May it please the Court. I'm Jim Morsi from the State Appellate Defender, representing Zachary Brown, the petitioner appellant. In People v. Patterson, the Illinois Supreme Court directly decided against all of the arguments raised in Issue 2 of the brief relating to the juvenile transfer statute, and I cannot ask this Court to overrule the Supreme Court. That's a good idea. Sometimes we'd like to, but... I will not ask this Court to overrule the Supreme Court. I would be happy to answer any questions relating to that issue, but we'll focus today on the issues relating to great bodily harm. Before you move to that, one of my questions, just to make sure we've covered it. So there's nothing left in that part of the argument that survives Patterson? No, there aren't. That may be still floating out there in one of the companion cases. They directly decided all of the issues raised in Issue 2. All right. Thank you. So in this case, the State failed to present sufficient evidence regarding the nature and extent of the wounds to Ian Roy's left ankle and right thigh to prove beyond a reasonable doubt that he sustained great bodily harm. Let me ask you a question. Give me an example of what you consider to be great bodily harm. Well, Your Honor, it's determined on a fact-by-fact, case-by-case basis, and the term great bodily harm is not itself susceptible to precisely the definition. But just humanly for a moment, under these facts where somebody got two gunshot wounds to his body, tell me what else would constitute great bodily harm. If I understand correctly, one of the bullets is still lodged in his leg. Is that correct? Correct. The bullet to his right thigh penetrated an unknown area of his right thigh and went to an unknown depth in his thigh. Tell me, in your opinion, under these facts, what would constitute great bodily harm? Well, under these facts, it's for this court to determine, based on the nature and extent of the injury and the evidence of the medical treatment required, what would constitute great bodily harm. I'm asking you. Sure. Well, in this case, Your Honor, right after Ian Roy was shot in the leg, he walked off the bus and was walking away to go about his business. Okay. So in other words, he got shot, but because he was able to stand and walk on his own two feet, that's not great bodily harm. It's just a little shot versus a big one. I mean, I'm not grasping your argument as to what is the difference between what you consider to be great bodily harm and what happened to the victim in this case, and I'm asking you to highlight it for me. Sure. Well, the issue in this case is the State simply failed to present sufficient evidence as to what caused that Ian Roy suffered great bodily harm. Okay, so that's a good starting point. And what would, under these facts, what additional evidence should the State have presented? The nature and extent of the wounds, possibly the size of the wound, any medical treatment required to treat these wounds. None of that evidence was presented in this case. There was some evidence that he was shot, and that one bullet to his ankle, quote, went in and came out, and a bullet went into an unknown depth in his right thigh. So, in other words, two bullets, it's not so bad since he was able to walk. Is that what you're saying? Well, Your Honor, he was shot twice, but we really don't have much information about the nature and extent of those wounds. We do know the man was shot, counsel, twice. We do know the man was shot. And you're saying that since he was able to walk, and, you know, he got two bullets in him, but he was able to walk, and his leg wasn't blown off, so it wasn't so bad. Is that what you're saying? I'm not saying simply because his leg was not blown off it wasn't so bad. What I'm saying is that there needs to be more to meet the threshold requirement of great bodily harm in this case. And I've been asking you to tell me what you think that is under these facts, and so far I'm not getting much back. Sure. Your Honor, if there was some kind of evidence as to he was taken to the hospital and required a significant amount of medical treatment to treat these wounds, that would be probative of great bodily harm. If there was some evidence that the bullet, for instance, struck a major artery in his thigh, that would be evidence of great bodily harm. If there was some evidence as to the depth that the bullet penetrated into his thigh, that could constitute evidence of great bodily harm. Are you saying they should have introduced like an X-ray to show how far it went in the thigh? Does it matter if it's an inch in the thigh or two inches in the thigh? I would say that is something to be taken into consideration, but the State here didn't even ask Mr. Roy how deep the bullet went, you know, if there was any medical treatment required, whether he required stitches, how large the wound was on his leg or on his ankle in this case. What are typical examples of having a bullet penetrate your body and not causing great bodily harm? Well, Your Honor, it could simply penetrate. I'm having difficulty trying to imagine anything. Any time a bullet is blasted in a person's body, great bodily harm has not occurred. Well, gunshot wounds are not per se great bodily harm, and that has to be determined based on the evidence of the injury. Certainly not, but I'm still having trouble conjuring what type of injury are we talking about that's not great bodily harm that has occurred due to having a bullet blasted into one's body. Well, I mean, it is conceivable that a bullet could penetrate one's body and not cause great bodily harm. Well, I remember old Hopalong Cassidy movies where he used to get shot in the shoulder and say, oh, it's just a scratch, but that's fiction. Let's talk about real life. Sure. In real life, the State has the burden of proving beyond a reasonable doubt based on evidence presented in the case that the wounds were a great bodily harm, and here the State simply did not meet that burden. The only evidence we have is that the bullet went in and came out of the left ankle, and a bullet penetrated his right thigh, after which Mr. Roy got off the bus and was walking away to, quote, go about his business and was only stopped by responding police officers and put in an ambulance. He then walked to this ambulance unassisted by the police officers. He was transported to the hospital, but we have no evidence of what occurred at the hospital. Mr. Marcy, you know, it sounds like you're saying, okay, he got shot a couple of times. It wasn't so bad. After all, he was able to walk. I mean, that's what it sounds like you're saying. Is that what you're saying? I'm not saying it wasn't so bad that he was shot, Your Honor. What I'm saying is there simply wasn't enough evidence in this case to meet the threshold requirement of great bodily harm. Bodily harm, baseline bodily harm, is defined as some sort of physical pain or damage to the body, like lacerations, bruises, or abrasions, whether temporary or permanent. And here, Mr. Roy obviously did suffer bodily harm, but the evidence did not meet the threshold of great bodily harm. Ultimately, Your Honor, our argument is that evidence of two wounds of an indeterminate size that the jury was never given an opportunity to view was simply insufficient to prove great bodily harm. And based on that, we are asking this Court to remand for resentencing on the merge count of attempt murder, including the personal discharge of a firearm. Now, had Zachary Brown only been charged with attempt first-degree murder, he would have been tried in juvenile court, but he was transferred to adult court because he was also charged with activated battery with a firearm. As a result, Zachary faced a minimum sentence of 31 years for attempt murder and received an actual sentence of 50 years. Now, the trial court abused its discretion when it imposed this de facto life sentence because it guarantees that Mr. Brown will never be restored to useful citizenship. At the time of the offense in this case, Mr. Brown was only 16 years old, and he was at a good high school and had strong family support. He also lacked a significant criminal history. He only had one prior juvenile adjudication for residential burglary, and that occurred while he was awaiting trial in this case. Now, the Illinois Constitution. Yes? Mr. Morrissey, I couldn't find this. Did this defendant know the victim at all before he shot him? It wasn't clear. It was not presented at trial what the relationship was. So, in other words, he just got onto the bus and pumped a couple of bullets into a person he didn't know, but you're saying the sentence was too great because of what? Because the Illinois Constitution mandates that criminal penalties be fashioned in a manner to restore the offender to useful citizenship. You talk about his family and so on. You know, he's 16 years old. He was in school. He had a family. That didn't preclude him from going to the bus stop and accosting a person he'd never seen before and pumping several bullets, two bullets into him and firing on a bus that was loaded with other people, including children. Correct. I'm sure the trial court was concerned about that. Well, the United States Supreme Court and the Illinois Supreme Court have found that juveniles have diminished culpability because of the attributes of youth that lead to these rash decision-making and that they have a greater potential for rehabilitation. So, based on the Illinois Constitution and these Supreme Court cases, rehabilitative potential should be one of the paramount considerations in fashioning a juvenile sentence. Now, here at the trial court, do you agree that if we, assuming we find that we can't get around by your side of the great bodily harm argument, that the minimum sentence is 31 years, it's 6 plus 25? Correct. Are you making any argument about the 25-year add-on under that hypothetical? Under that hypothetical, I am not, Your Honor. Okay. Correct. But here, the baseline sentence for class X attempt first-degree murder is 6 years. And Zachary Brown received a sentence more than four times that minimum of 25 years, plus the 25 add-on, for a total sentence of 50 years. Can you give us good reason as to why this should have been on the low end of the scale and not at the upper end? Sure, Your Honor. Like I said, Mr. Brown was only 16 at the time of the offense. And juvenile offenders do have a greater ability to be rehabilitated. In this case, this 50-year sentence guarantees that Mr. Brown will never be released from prison or at least restored to useful citizenship. He will be 66 at the time he's released from prison if he serves his entire sentence, and 69 when he completes his mandatory supervised release. Although the court did mention in passing that Mr. Brown was a juvenile, there was no indication that he considered his rehabilitative potential, and that's reflected in this 50-year sentence. Therefore, Your Honors, we are asking for this court to remand for resentencing where they actually take into consideration his rehabilitative potential. Thank you. Thank you. Can I have one quick question? Sure. His rehabilitative potential, as far as you're concerned, that's solely based on the fact that he was a teenager when he committed this crime? Well, he was a teenager that was in school and had strong family support. And, yes, for juveniles. As you mentioned before, that didn't stop him from going out and pumping bullets into somebody he'd never seen before. So what is your strongest argument about the rehabilitative potential? My strongest argument is that the United States Supreme Court and Illinois Supreme Court have said in no uncertain terms that juveniles have a great ability to be rehabilitated, and the Illinois Constitution mandates that sentences be constructed to restore an offender to useful citizenship. And this sentence guarantees that the juvenile offender, Zachary Brown, will never be restored to useful citizenship. Thank you. May it please the Court. The evidence proved beyond a reasonable doubt that the defendant committed a 10-first-degree murder of Ian Roy and that during the commission of that offense, he personally discharged a firearm that approximately caused great bodily harm to the victim, Ian Roy. The evidence showed that the defendant boarded that public pace bus that day, discharged a firearm, shooting the victim not once but twice, causing two penetrating gunshot wounds. What is at issue here is whether the people proved beyond reasonable doubt that there was great bodily harm. Based on the standard of review, where the defendant has challenged the sufficiency of the evidence, the standard is when considering the evidence in the light most favorable to the people, whether a rational try or fact could have determined that there was great bodily harm met in this case. Certainly, it has been. When viewing the evidence in the light most favorable to the people, certainly a rational try or fact could have determined that these two penetrating gunshot wounds constituted great bodily harm. As you've indicated, the victim suffered two penetrating gunshot wounds, one through and through a gunshot wound to the left ankle and a second to his right thigh where the bullet remains. What hasn't been discussed yet is that the victim suffers long-term injury based on the gunshot wound to his right thigh. The victim testified over a year and a half after the shooting at trial that he still felt numbness in his leg periodically, that he was feeling his leg for no reason, as a result of being shot in his leg. Clearly, two gunshot wounds of this nature causing long-term injury was sufficient for a rational try or fact to determine great bodily harm. Moreover, in comparison, and I'd like to point out the case of People v. DeLeon, which is a sentencing case regarding consecutive sentencing. In that case, the court determined, for purposes of sentencing, that a penetrating gunshot wound is more than sufficient to determine severe bodily injury. We would ask the same here, that two penetrating gunshot wounds of this nature causing long-term injury to the victim would also be more than sufficient. Could I move you over to the first part of the sentencing for the attempt? Absolutely. The court sentenced him to how many years on that? 25? 25. Which is on the high end. He could have given him 30. Absolutely. The range was 6 to 30. On the attempt murder, the trial court felt that 25 years was the appropriate sentence in this case. You say it was an appropriate sentence in this case? Absolutely. Based on the facts of the case and where the defendant boarded a public pace bus in broad daylight, at rush hour, with a dozen passengers on the bus, including, as was mentioned, an 8-year-old child and a grandfather, seated only 3 feet away from where the defendant was shooting the victim. The court made a comment that this would have been a worse situation had the gun not jammed. Absolutely. What evidence was there that the gun, in fact, did jam? The victim testified that after 4 shots were fired that the gun jammed. I believe it was the victim that the defendant began to retreat from the bus after his gun jammed. And then he fixed it and fired a couple more shots. So if he did fire, if he shot, if he successfully got off a couple more rounds after this alleged jamming incident, then when the court made the comment, but for this jam, it could have been worse, the court is incorrect, isn't it? Because if there was a jam, it was only momentarily, and this defendant got off another two rounds. So, in fact, it didn't get worse, did it? I believe because he was at close range shooting the gun at the victim when the gun jammed, and he began to retreat and then shot off a couple more rounds, had his gun not jammed and he'd been standing over the victim where he was, this could have been a very different situation. He could have shot him several more times. But for the gun jam, he retreated and then shot two more before fleeing the scene. And the court recognized the seriousness of this offense where the defendant boarded this public face bus and put everyone in danger that day, the passengers, the bus driver, and the defendant had complete disregard for the safety of those passengers. The trial court explicitly recognized the serious threat to the community when he was fashioning the sentence, as well as explicitly recognizing that he considered the PSI, he considered the aggravating factors, he explicitly stated he considered the mitigation, including the defendant's age of 16. There's no indication here that the trial court failed to consider the rehabilitative potential or his age. Specifically, the court stated, I am saddened at the situation the defendant has put himself in because of his young age. The court stressed, although the defendant is a juvenile, he's done a very grown-up thing. The defendant points to nothing in this record to support his assertion that the trial court failed to recognize or failed to consider his rehabilitative potential other than the length of the sentence. Ms. Pugliese, one of the things I've come to realize in two years here is the immediate nature of the whole issue of juvenile sentencing, starting with Miller v. Alabama and continuing for the last few years. And this is a troubling issue for society. And here we have a 15-year-old who got, what, 50 years? Yes. For an injury that, I mean, we don't want 15-year-olds shooting guns on buses. We don't want anybody shooting guns on buses. But one of the problems I've got here is we've got this automatic 25-year add-on. And it took away the judge's discretion. You know, the judge had to start at 31 and go up from there. And even at 31, you're taking away basically this entire person's life. I mean, he'll be in his late 40s when he was released, even if we go to 31. Isn't that enough punishment? And I know it's a rhetorical question for the state. But given the relatively minor injuries, which, you know, we'll say they're great bodily harm under the definition. But isn't 31 years enough? Why not? I'll agree that 50 years is a lengthy sentence. I'll give you that. But congratulations, because a lot of lawyers never concede when it's obvious that they should. So I appreciate that. I really do. However, based, as you mentioned, Miller v. Alabama, Graham v. Roper, those all are focused on life without parole and the death penalty. There's not a case that indicates that this add-on firearm enhancement is unconstitutional. Defendant received a term of year sentence. So Miller, Graham, Roper, those all don't apply. And this does not make this penalty constitutional. They're not directly on point. Because we all know that they deal with life. They deal with the death penalty and the other end. But don't they stand for a greater proposition that the highest court in the country is telling us stop locking up 14-year-olds? I mean, we have the 12-year-olds in Wisconsin that was in the news last week who are going to be tried as adults. Don't we have a message there? Isn't our Illinois Supreme Court sort of following in that trend? If not, why not? I think they're following that trend with regard to, like you said, mandatory life or the death penalty. But in a term of year sentence that has not been held to be unconstitutional at this time. And the legislature enacted firearm enhancement. But keeping in mind, we're not dealing with whether it's unconstitutional. We're dealing with whether the 50-year sentence was excessive. And I'll throw in maybe under the Illinois Constitution, which is a little different. And given the trend that the courts are embracing with regard to crimes that are committed by juveniles. I mean, this was a heinous crime. I don't think anybody would deny that. But as your opponent pointed out, what about the rehabilitative potential? It's hard to rehabilitate somebody when they're 69. I'm sure there are 69-year-olds who would disagree with that. But if he is locked up until he's 69, essentially his life is over for purposes of rehabilitation. What about that, given the trend? And we're not talking about the constitutionality. I'm just asking your opinion about what courts across the country are doing, given the lead of the United States Supreme Court with focusing on the kinds of punishment that's appropriate for juveniles. Well, while you've discussed that trend, and it may be a trend that the court is recognizing juveniles as being given some consideration for their age, like you said, the standard review in this case is really, we need to look at the abuse of discretion of the trial court, regardless of that right now. Because what we have to look at, whether this court disagrees with the trial court sentence and whether the factors were ordered in a way differently, whether you would have given more attention to the age. But wouldn't that be the answer in every case? I think we're more asking you on a hypothetical or philosophical basis. Because what you just said would apply in every case, in terms of a response. If it's within the sentencing range, basically we could always rubber stamp the trial court and say, well, it's within the sentencing range, so we're not going to touch it. But that's why you have an appellate court to sometimes second-guess the trial court. That's our job. Right. Although I feel like in this case, where the record was made clear from the trial court that he considered all the appropriate factors in the pre-sentence investigation, there's been nothing pointed to that the trial court did wrong in this situation. Merely because the defendant doesn't like the way these factors were balanced, does that pass through the reason to... Did the defendant have a significant prior criminal history that played into the PSI? The defendant at age 16 did have one prior conviction for residential burglary he received in 2011, during the pendency of this case. While he was waiting to be tried for this, he committed a burglary? I don't know the exact date of that, but he was sentenced during the pendency of this case in 2011. Okay. Are there no further questions? Those foregoing reasons are for those stated in our brief that people respectfully request that this court affirm the defendant's conviction and sentence. Thank you, counsel. Mr. Morrissey. No rebuttal, Your Honor. Are there any questions from the panel on rebuttal? If not, then the matter will be taken under advisement, and court will stand in recess. Thank you.